**Lansing, Michigan**

# Opinion

Chief Justice:    Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED JULY 12, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellant,

v                             No. 144036

TERRY NUNLEY,

       Defendant-Appellee,
and

ATTORNEY GENERAL,

       Intervenor.

_____

BEFORE THE ENTIRE COURT

ZAHRA, J.

The issue in this case is whether a Michigan Department of State (DOS)[1]

certificate of mailing is testimonial in nature and thus that its admission, without

---

[1] Although the statutes at issue in this case refer to the Secretary of State, for ease of reference we generally refer to the DOS given that the Michigan Vehicle Code defines "Secretary of State" as including agents and employees of the Secretary of State. MCL 257.58.

1

accompanying witness testimony, violates the Confrontation Clause of the state and federal constitutions. The DOS generated the certificate of mailing to certify that it had mailed a notice of driver suspension to a group of suspended drivers. The prosecution seeks to introduce this certificate to prove the notice element of the charged crime, driving while license revoked or suspended (DWLS), second offense, MCL 257.904(1) and (3)(b).[2] We hold that a DOS certificate of mailing is not testimonial because the circumstances under which it is generated would not lead an objective witness reasonably to believe that the statement would be available for use at a later trial. Instead, the circumstances reflect that the creation of a certificate of mailing, which is necessarily generated *before* the commission of any crime, is a function of the legislatively authorized administrative role of the DOS independent from any investigatory or prosecutorial purpose. Therefore, the DOS certificate of mailing may be admitted into evidence absent accompanying witness testimony without violating the Confrontation Clause. Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the district court for further proceedings consistent with this opinion.

---

[2] MCL 257.904(1) provides:

> A person whose operator's or chauffeur's license or registration certificate has been suspended or revoked and who has been notified as provided in [MCL 257.212] of that suspension or revocation, whose application for license has been denied, or who has never applied for a license, shall not operate a motor vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of motor vehicles, within this state.

2

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 11, 2009, the DOS issued an "ORDER OF ACTION" pursuant to MCL 257.303(2) that revoked defendant Terry Nunley's license from June 27, 2009, to at least June 26, 2010, because he had "2 OR MORE SUBSTANCE ABUSE CONVICTIONS IN 7 YEARS." The order included a "WARNING," telling defendant not to drive and an explanation of the right to appeal. The DOS contends that it sent this order to defendant by first-class United States mail on June 22, 2009. The DOS contemporaneously generated a certificate of mailing, which indicated that the DOS had sent defendant the order. The DOS stored the certificate without sending defendant a copy. The certificate of mailing, which includes a list of dozens of names of individuals to whom notice was sent on that particular date, stated:

> I CERTIFY THAT I AM EIGHTEEN YEARS OF AGE OR OLDER AND THAT ON THIS DATE NOTICE OF THE ORIGINAL ORDER OF SUSPENSION OR RESTRICTED LICENSE WAS GIVEN TO EACH OF THE PERSONS NAMED BELOW BY FIRST–CLASS UNITED STATES MAIL AT LANSING, MICHIGAN AS PROVIDED IN SECTION 212 OF MICHIGAN VEHICLE CODE (MCL 257.212).
>
> DATE <u>6–22–09</u>    OFFICER OR EMPLOYEE <u>F. BUETER</u>
>       [handwritten]                               [typed]

On September 9, 2009, while defendant's license was still suspended, the police stopped him for failing to properly secure a load on his truck and issued him a citation for DWLS. The prosecution subsequently enhanced defendant's charge to DWLS, second offense, under MCL 257.904(3)(b) because of defendant's driving record. The elements of DWLS require the prosecution to prove (1) that the defendant's license was revoked or suspended, (2) that the defendant was notified of the revocation or suspension as

3

provided in MCL 257.212, and (3) that the defendant operated a motor vehicle on a public highway while his or her license was revoked or suspended.

Before trial, the prosecution moved in limine to admit the certificate of mailing as proof that defendant had received notice that his license had been revoked—even though the certificate did not contain the actual signature of the employee listed on it—without producing the employee listed on the certificate or another DOS employee as a witness. Defendant objected that the admission of the certificate of mailing under those circumstances would deny him his right of confrontation under the Sixth Amendment of the United States Constitution and article 1, § 20 of the Michigan Constitution. The district court denied the prosecution's motion, holding that the nature of the certificate required a signature in order to be sufficient to support notice for a DWLS charge and that to admit the certificate without testimony would violate defendant's right to confront the witnesses against him because there was no other reason to use the document except in litigation.

The prosecution sought leave to appeal in the circuit court, which, in a written opinion, affirmed in part and reversed in part the district court's order. The circuit court concluded that the district court had erred by ruling that a handwritten signature was required for the certificate to be valid and effective notice under MCL 257.212. The circuit court, however, agreed with the district court that to admit the certificate without testimony would violate defendant's right of confrontation. The circuit court reasoned:

> [T]he [certificate] is not a multipurpose record or one kept by an agency for its own purposes (that are not principally litigation). The statute that mandates the sending of the Certificate of Notice is the statute that defines the criminal offense with which defendant is charged. There has been no showing that the Certificate is used for anything other than proof of

4

the notice element of DWLS. The People effectively admit this when they describe the twofold purpose of the Certificate: "one to state that notice was given to the defendant, and two, to show the defendant's license was suspended." Unlike the "narrowly circumscribed" class of documents such as "a clerk's certificate authenticating an official record—or a copy thereof—for use as evidence," . . . this is not a certificate that the document at issue is an accurate copy of public record . . . .

The legislature apparently intended that the certificate of notice serve as documentary evidence . . . . That the legislature intended it that way does not mean it does not violate the confrontation clause—in fact, as in *Melendez-Diaz* [*v Massachusetts*],[3] that circumstance simply establishes that the declaration is, indeed, testimonial.

The Court of Appeals granted the prosecution's interlocutory application for leave to appeal.[4] In a split, authored decision, the Court of Appeals majority affirmed the lower courts' rulings that the testimonial nature of the certificate meant that its admission would violate the Confrontation Clause if it were admitted without witness testimony.[5] The majority reasoned that "in light of the fact that notification is an element of the offense, certainly the certificate of mailing was made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[6] Analogizing the certificate of mailing to the lab analyst's report offered to prove an element of the crime in *Melendez-Diaz*, the majority stated, "Indeed, the certificate of mailing here is being offered to prove an element of the offense: the

---

[3] *Melendez-Diaz v Massachusetts*, 557 US 305; 129 S Ct 2527; 174 L Ed 2d 314 (2009).

[4] *People v Nunley*, unpublished order of the Court of Appeals, entered March 1, 2011 (Docket No. 302181).

[5] *People v Nunley*, 294 Mich App 274; ___ NW2d ___(2011).

[6] *Id*. at 285 (citations and quotation marks omitted).

notification required by the plain language of MCL 257.904(1)."[7] Thus, the certificate was "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination."[8]

The majority rejected the prosecution's argument that the certificate was merely a clerk's certification of a record, stating that "[t]he critical distinction is that the author of the certificate of mailing, here F. Bueter, is providing more than mere authentication of documents; he is actually attesting to a required element of the charge."[9] The majority also rejected the prosecution's argument that the certificate was not created solely for litigation regardless of whether it could be considered a business record because no statute required maintenance of the certificate and "the [prosecution] concede[d] that one purpose of the certificate of mailing is 'the production of evidence for use at trial . . . .'"[10]

Judge SAAD, in dissent, concluded that the certificate is not testimonial because it was created before a crime was even committed and the employee creating the certificate was fulfilling an administrative duty.[11] Judge SAAD believed it was irrelevant that the certificate was used to prove an element of the crime, stating:

> While the majority is certainly correct that the certificate of mailing is an essential piece of evidence in proving defendant's guilt, it does not follow that this renders the certificate testimonial. As noted, the majority's

---

[7] *Id.*

[8] *Id.* at 294 (citation and quotation marks omitted).

[9] *Id.* at 286-287.

[10] *Id.* at 291 (citation omitted).

[11] *Id.* at 298-299 (SAAD, P.J., dissenting).

6

analysis also ignores the context in which the evidence is made. At the time the certificate of mailing was created, no crime had taken place, nor was there an ongoing criminal investigation involving the defendant. Therefore, it was impossible for F. Bueter, or an "objective witness," "reasonably to believe" that the certificate of mailing, at the time of its creation, "would be available for use at a later trial." *Crawford* [*v Washington*, 541 US 36, 52; 124 S Ct 1354; 158 L Ed 2d 177 (2004)] (citation and quotation marks eliminated).

. . . It strains credulity to suggest that the certificate was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," because Nunley had not committed a crime, and F. Bueter, when he certified the mailing, had no reason to expect that Nunley would commit a crime. *Crawford*, 541 US at 52. Bueter, or any other state employees who create certificates of mailing, "cannot be considered witnesses" against Nunley "when no prosecution existed at the time of data entry." [*State v*] *Shipley*, 757 NW2d [228, 237 (Iowa, 2008)]. Bueter would likely have suspected that the certificate of mailing was just that: a certificate of notice, certifying a warning to encourage defendant to comply with the law, not a piece of evidence for use in a hypothetical trial. As such, the certificate of mailing was "created under conditions far removed from the inquisitorial investigative function—the primary evil that *Crawford* was designed to avoid." *Id*. at 238. Therefore, on the basis of the context in which it was created, the certificate of mailing is nontestimonial.[12]

The prosecution filed an application for leave to appeal in this Court. The Attorney General moved to intervene and for immediate consideration, as well as to stay the effect of the Court of Appeals' opinion and enlarge the record on appeal.

With respect to the motion to enlarge the record, which we ultimately granted, the Attorney General sought to introduce the affidavit of the DOS Driver and Vehicle Records Division Director, Fred Bueter, whose name, "F. Bueter," was printed on the certificate of mailing concerning defendant. In his affidavit, Bueter describes his

---

[12] *Id*. at 302-304.

7

duties—including ensuring the integrity of motor vehicle records—and facts related to the creation of certificates of mailing. Bueter averred that the DOS sends out numerous types of notices in compliance with MCL 257.212, the vast majority of which are computer generated. According to Bueter, courts across Michigan notify DOS electronically of driving-record activity related to the withdrawal of driving privileges. An internal computer program at DOS receives the information and updates the central driving record of the driver and then generates a notice to the driver. In some instances, the notice is generated and the certificate of mailing is included on the notice itself.[13] A copy is then maintained at the DOS and another copy is mailed to the driver. When mandatory suspension or revocation is involved, as in this case, the process is mostly the same. The difference, however, is that a certificate of mailing is created separately from the notice of suspension or revocation and only the notice (the so-called "Order of Action"), and not the certificate, is sent to the driver. The certificate of mailing is printed once each week and lists hundreds of drivers—defendant's name, for example, is included on the eleventh page of the certificate. A DOS staff member manually fills in the date on the certificate. Bueter himself does not fill in the date, and despite understanding the process of how the notices and certificates are created and shipped, he

---

[13] In the examples Bueter provides, the combined notices and certificates of mailing are sent to drivers who have failed to pay a traffic fine or the assessment of statutory driver responsibility fees, resulting in the suspension of driving privileges. See MCL 257.321a(2) and MCL 257.732a. These types of violations alone cause the DOS to generate approximately 800,000 combined notices and certificates of mailing a year. With regard to mandatory suspensions and revocations, as in the present case, the DOS generates approximately 50,000 notices a year.

lacked any personal knowledge regarding any particular notice of license suspension or revocation or regarding any particular certificate of mailing.

We granted the Attorney General's motions for immediate consideration, to intervene, and to stay the precedential effect of the Court of Appeals' opinion.[14] Subsequently, we granted the application for leave to appeal, directing the parties to address

> whether the Court of Appeals erred when it held that the Department of State certificate of mailing is testimonial in nature and thus that its admission, without accompanying witness testimony, would violate the Confrontation Clause. See *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004); *Melendez-Diaz v Massachusetts*, 557 US 305; 129 S Ct 2527; 174 L Ed 2d 314 (2009); and *Bullcoming v New Mexico*, 564 US ___; 131 S Ct 2705; 180 L Ed 2d 610 (2011).[15]

## II. STANDARD OF REVIEW

Whether the admission of certificates of mailing would violate a defendant's Sixth Amendment right of confrontation is a question of constitutional law that this Court reviews de novo.[16]

## III. ANALYSIS

### A. CONFRONTATION CLAUSE JURISPRUDENCE

The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the

---

[14] *People v Nunley*, 490 Mich 922 (2011).

[15] *People v Nunley*, 490 Mich 965 (2011).

[16] *People v Jackson*, 483 Mich 271, 277; 769 NW2d 630 (2009).

9

witnesses against him . . . ."[17] The state of Michigan has at all times "afforded a criminal defendant the right to 'be confronted with the witnesses against him,' [by] adopting this language of the federal Confrontation Clause verbatim in every one of our state constitutions."[18]

The Confrontation Clause is "primarily a functional right" in which the right to confront and cross-examine witnesses is aimed at truth-seeking and promoting reliability in criminal trials.[19] Functioning in this manner, "the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused."[20]

The specific protections the Confrontation Clause provides apply "only to statements used as substantive evidence."[21] In particular, one of the core protections of the Confrontation Clause concerns hearsay evidence that is "testimonial" in nature.[22] The United States Supreme Court has held that the introduction of out-of-court testimonial statements violates the Confrontation Clause; thus, out-of-court testimonial statements

---

[17] US Const, Am VI.

[18] *People v Fackelman*, 489 Mich 515, 525; 802 NW2d 552 (2011), citing Const 1839, art 1, § 10, Const 1850, art 6, § 28, Const 1908, art 2, § 19, and Const 1963, art 1, § 20.

[19] *Fackelman*, 489 Mich at 528-529.

[20] *Crawford*, 541 US at 50.

[21] *Fackelman*, 489 Mich at 528.

[22] *Crawford*, 541 US at 51.

are inadmissible unless the declarant appears at trial or the defendant has had a previous opportunity to cross-examine the declarant.[23]

Addressing what constitutes a testimonial statement, the United States Supreme Court explained in *Crawford* that "testimony" is a "'solemn declaration or affirmation made for the purpose of establishing or proving some fact.' An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."[24] The Court refrained from giving one particular definition of what evidence will constitute a "testimonial statement," but did provide the following guidance:

> Various formulations of this core class of "testimonial" statements exist: "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" These formulations all share a common nucleus and then define the [Confrontation] Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition—for example, *ex parte* testimony at a preliminary hearing.[25]

In the case at hand, the prosecution moved for the admission of the certificate of mailing without accompanying witness testimony in order to prove the truth of the matter

---

[23] *Id*. at 53-54.

[24] *Id*. at 51 (citations omitted).

[25] *Id.* at 51-52 (citations omitted; first alteration in original).

asserted therein: that defendant was sent notice regarding the revocation of his driver's license by first-class United States mail as provided in MCL 257.212. Thus, admitting the certificate of mailing would constitute substantive hearsay intended to prove the notice element of DWLS.[26] Because the certificate of mailing is properly characterized as substantive hearsay, defendant is entitled to the protections of the Confrontation Clause if the certificate of mailing is indeed testimonial. Although the United States Supreme Court has not specifically addressed whether a certificate of mailing like the one at issue here is testimonial, we will review some of its more recent post-*Crawford* decisions addressing this question in other contexts, as well as our own recent decision in *People v Fackelman*.[27]

In *Davis v Washington*, the United States Supreme Court considered whether statements made to law enforcement personnel during a 911 call or at a crime scene are testimonial.[28] The Court recognized that *Crawford* had identified "'[s]tatements taken by police officers in the course of interrogations'" as among the possible formulations of what constitutes a testimonial statement.[29] The Court then addressed in what instances police interrogations are testimonial, holding that

---

[26] See MRE 801(c). As a result, even if admitting the certificate of mailing absent accompanying testimony does not violate the Confrontation Clause, the trial court would still need to conclude that it qualifies under a hearsay exception within our rules of evidence for it to be properly admitted. See MRE 802.

[27] *Fackleman*, 489 Mich 515.

[28] *Davis v Washington*, 547 US 813, 817; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

[29] *Id*. at 822, quoting *Crawford*, 541 US at 52 (alteration in original).

12

[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[30]

One of the circumstances the Court examined when making this objective determination in *Davis* was the formality of the statement.[31] Ultimately, the Court ruled that the declarant's statements identifying her assailant during a 911 call were not testimonial.[32] However, in the companion case of *Hammon v Indiana*,[33] the Court ruled that the *Hammon* declarant's statements in response to police questioning at the crime scene were testimonial.[34]

In *Melendez-Diaz*, the United States Supreme Court considered whether "certificates of analysis" were testimonial when they reported the results of a forensic analysis showing that material seized by the police and connected to the defendant was cocaine.[35] The Court characterized the certificates as "quite plainly affidavits," which fall within the core class of testimonial statements and are defined as "'declaration[s] of

---

[30] *Davis*, 547 US at 822.

[31] See *id.* at 827, 830.

[32] *Id.* at 829.

[33] *Hammon* was resolved together with *Davis* at 547 US 813; 126 S Ct 2266; 165 L Ed 2d 224 (2006).

[34] *Id.* at 830.

[35] *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2530.

13

facts written down and sworn to by the declarant before an officer authorized to administer oaths" and "are incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact."[36]  Given that the fact at issue was whether the substance found in the defendant's possession was, as the prosecution claimed, cocaine, then this was the testimony that the analysts would have been expected to provide if called as witnesses at trial.[37]  The certificates were thus "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'"[38]

In addition, the Court reasoned that the certificates were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," given that "under Massachusetts law the *sole purpose* of the [certificates] was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance."[39]  Further, "the analysts were aware of the [certificates'] evidentiary purpose, since that purpose—as stated in the relevant state-law provision—was reprinted on the [certificates] themselves."[40]

---

[36] *Id*. at ___; 129 S Ct at 2532 (citations and quotation marks omitted; alteration in original).

[37] *Id*. at ___; 129 S Ct at 2532.

[38] *Id.* at ___; 129 S Ct at 2532, quoting *Davis*, 547 US at 830.

[39] *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2532 (citations and quotation marks omitted).

[40] *Id*. at ___; 129 S Ct at 2532.

14

In *Bullcoming v New Mexico*, the United States Supreme Court considered whether "the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification."[41] The Court rejected the argument that the testimony of a "surrogate" expert was a constitutionally permissible substitute for the testimony of the analyst who had actually conducted the test.[42] The Court also rejected the argument that the report was not testimonial, analogizing it to the certificates of analysis in *Melendez-Diaz* and pointing out that "formalities attending the 'report of blood alcohol analysis' are more than adequate to qualify [the analyst's] assertions as testimonial" and that "[t]he absence of notarization does not remove his certification from Confrontation Clause governance."[43] Further, Justice Ginsburg, joined by Justice Scalia, rejected the argument that this "unbending application of the Confrontation Clause . . . would impose an undue burden on the prosecution," reiterating that the Confrontation Clause "'may not [be] disregard[ed] at . . . our convenience.'"[44]

---

[41] *Bullcoming*, 564 US at ___; 131 S Ct at 2710.

[42] *Id*. at ___; 131 S Ct at 2710, 2713.

[43] *Id*. at ___; 131 S Ct at 2717.

[44] *Id*. at ___; 131 S Ct at 2717-2718 (citation omitted; alteration in original). Only Justice Scalia joined part IV of Justice Ginsburg's opinion, which otherwise constituted the opinion of the Court.

Most recently, the United States Supreme Court issued a plurality opinion in *Williams v Illinois* that addressed whether portions of the expert testimony from a forensic specialist violated the defendant's right of confrontation.[45] Specifically, the expert witness testified that a DNA profile produced by an outside laboratory using semen from vaginal swabs from the victim matched a DNA profile produced by the state police lab using a sample of the defendant's blood.[46] The defendant argued that any testimony from the expert implicating what had taken place at the outside laboratory violated the Confrontation Clause.[47]

The lead opinion concluded that the expert's testimony concerning the outside laboratory did not run afoul of the Confrontation Clause for two reasons.[48] First, the out-of-court statements were related by the expert only for the purpose of explaining the assumptions on which the expert's opinion relied. They were not offered for the truth of the matter asserted.[49] Second, even if the report that the outside laboratory produced had been admitted into evidence, it was not a testimonial document.[50]

With respect to the second reason, the lead opinion emphasized that the report "was not prepared for the primary purpose of accusing a targeted individual," which

---

[45] *Williams v Illinois*, 567 US ___; 132 S Ct 2221; ___ L Ed 2d ___ (2012).

[46] *Id*. at ___; 132 S Ct at 2227 (opinion by Alito, J.).

[47] *Id*. at ___; 132 S Ct at 2227.

[48] *Id*. at ___; 132 S Ct at 2228.

[49] *Id*. at ___; 132 S Ct at 2228.

[50] *Id*. at ___; 132 S Ct at 2228.

distinguished the report from the evidence at issue in *Crawford* and its progeny.[51] Rather, the lead opinion reasoned that, viewed objectively, the primary purpose of the report was to catch the perpetrator who was still at large and that no one at the outside laboratory could have known that the DNA profile would implicate the defendant.[52] Thus, the lead opinion viewed the report as "very different from the sort of extrajudicial statements, such as affidavits, depositions, prior testimony, and confessions, that the Confrontation Clause was originally understood to reach."[53]

In a concurring opinion, Justice Thomas disagreed with the lead opinion's two rationales.[54] He nonetheless agreed that the challenged testimony did not violate the Confrontation Clause because the report "lacked the requisite 'formality and solemnity' to be considered 'testimonial'. . . ."[55] The dissenting opinion expressed agreement with Justice Thomas that the statements were offered for the truth of the matter asserted.[56] The dissent, however, concluded that the out-of-court statements were indeed testimonial under *Melendez-Diaz* and *Bullcoming*, noting that although it is relevant to inquire whether the primary purpose of the statement was to establish "past events potentially

---

[51] *Id*. at ___; 132 S Ct at 2242-2243.

[52] *Id*. at ___; 132 S Ct at 2243-2244.

[53] *Id*. at ___; 132 S Ct at 2228.

[54] *Id*. at ___; 132 S Ct at 2255 (Thomas, J., concurring).

[55] *Id*. at ___; 132 S Ct at 2255 (citation and quotation marks omitted).

[56] *Id*. at ___; 132 S Ct at 2265, 2269-2270 (Kagan, J., dissenting); *id*. at ___; 132 S Ct at 2256 (Thomas, J., concurring).

relevant to later criminal prosecution," *Crawford* and its progeny do not suggest that "the statement must be meant to accuse a previously identified individual[.]"[57]

Lastly, in *Fackelman*, we considered whether evidence from a psychiatrist's report violated the defendant's right of confrontation.[58] This Court concluded that the evidence from the report fell within the core class of testimonial statements that are subject to the Confrontation Clause.[59] This Court reasoned that the report memorialized the "defendant's medical history and the events that led to his admittance to the hospital, provided the all-important diagnosis, and outlined a plan for treatment."[60] Thus, this report constituted the psychiatrist's testimony regarding the defendant's mental illness.[61] Further, this Court opined that the statements in the report were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," given that

> (1) defendant's admittance to the hospital was arranged by lawyers, (2) defendant was arrested en route to the hospital, (3) the report noted that the Monroe County Sheriff requested notification before defendant's discharge, (4) defendant referred to a trial and to a gun in his responses related in the report, and, perhaps most significantly, (5) at its very beginning and ending, in which its overall context is most clearly identified, the report expressly

---

[57] *Id.* at ___; 132 S Ct at 2265-2267, 2273-2274 (Kagan, J., dissenting).

[58] *Fackelman*, 489 Mich at 518-519.

[59] *Id.* at 532.

[60] *Id.*

[61] *Id.*

focused on defendant's alleged crime and the charges pending against him.[62]

Accordingly, this Court concluded that the admission into evidence of the psychiatrist's diagnosis—an out-of-court, testimonial statement offered for its truth—violated the defendant's constitutional right to be confronted with the witnesses against him.[63]

## B. APPLICATION

The Court of Appeals majority relied largely on *Melendez-Diaz* to conclude that the certificate of mailing was testimonial in nature. In so doing, the majority stated that the "sole purpose of the preparation of the certificate of mailing was to provide proof of notice as required by MCL 257.212 . . . ."[64] And the majority reasoned that "in light of the fact that notification is an element of the offense, certainly the certificate of mailing was ""'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'"'"[65] We disagree.

To begin, we do not believe that the certificate of mailing here is necessarily akin to the types of extrajudicial statements—such as affidavits, depositions, prior testimony, and confessions—that *Crawford* included in the core class of testimonial statements.[66] The certificate of mailing memorializes that the DOS on a particular date sent the "Order

---

[62] *Id*. at 532-533.

[63] *Id*. at 534.

[64] *Nunley*, 294 Mich App at 289.

[65] *Nunley*, 294 Mich App at 285, quoting *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2532, quoting *Crawford*, 541 US at 52.

[66] See *Crawford*, 541 US at 51-52.

of Action" to defendant by first-class United States mail, notifying him that his driver's license had been revoked. Thus, like an affidavit, it certifies a fact in question.[67] However, this fact alone does not render the certificate a formal affidavit that is necessarily testimonial for purposes of the Confrontation Clause.

Instead, we believe that the circumstances under which the certificate was generated show that it is a nontestimonial business record created primarily for an administrative reason rather than a testimonial affidavit or other record created for a prosecutorial or investigative reason. As set forth earlier in this opinion, under *Crawford* and its progeny, courts must consider the circumstances under which the evidence in question came about to determine whether it is testimonial.[68] The certificate here is a routine, objective cataloging of an unambiguous factual matter, documenting that the DOS has undertaken its statutorily authorized bureaucratic responsibilities. Thus, the certificate is created for an administrative business reason and kept in the regular course of the DOS's operations in a way that is properly within the bureaucratic purview of a

_____

[67] See *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2532.

[68] *Id.* at ___; 129 S Ct at 2539-2540. We note that how one characterizes the certificate is not dispositive. Even if we characterized the certificate of mailing as an affidavit, it would not render it de facto testimonial. Instead, just as all statements made in response to police interrogations are not de facto testimonial, see *Davis*, 547 US at 822, not all documents akin to affidavits are de facto testimonial, see, e.g., *Williams*, 567 US at ___; 132 S Ct at 2242-2244 (opinion by Alito, J.); *id.* at ___; 132 S Ct at 2255 (Thomas, J., concurring) (a majority of the Court concluding that a lab technician's report producing a person's DNA profile was not testimonial given the circumstances in which the report was created and its lack of formality). Further, even if the certificate constitutes a business record, when such a document is "prepared specifically for use at . . . trial," it is generally testimonial and subject to confrontation. *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2540.

20

governmental agency. Our analysis of the nature and purpose of the certificate, as informed by the circumstances under which it was created, leads us to the conclusion that it is nontestimonial for the purposes of the Confrontation Clause.

Perhaps most significant to this analysis is the fact that the DOS certificates of mailing are necessarily created *before* the commission of any crime that they may later be used to help prove. This is because receipt of notice is an element of the crime of DWLS, and the certificate of mailing is created contemporaneously with the notice itself. Accordingly, a person, even one whose license has been suspended, cannot legally commit the crime of DWLS before he or she receives notice. Given this significant distinguishing fact and the relevant statutes, we conclude that the certificates of mailing are a result of the legislatively authorized administrative function of the DOS, which is independent of any investigatory or prosecutorial purpose.

Specifically, MCL 257.212 states:

> If the secretary of state is authorized or required to give notice under this act or other law regulating the operation of a vehicle, unless a different method of giving notice is otherwise expressly prescribed, notice shall be given either by personal delivery to the person to be notified or by first-class United States mail . . . .

MCL 257.904(1), in turn, generally recognizes that the DOS will provide service of notice to persons who have had their driver's licenses suspended or revoked. Further, it is without question that the DOS has the authority to notify drivers when their licenses are suspended or revoked as inherent within its duties to administer and regulate this

21

state's driver's licenses. Because of defendant's two alcohol related convictions,[69] the DOS was therefore "authorized," meaning "empower[ed]" and "give[n] a right or authority"[70] to send defendant notice that his driver's license had been revoked.

Once the DOS sent defendant the required notice regarding the revocation of his license, MCL 257.212 mandated that the notice be given in the manner previously described, i.e., through personal delivery or by first-class United States mail. MCL 257.212 further provides that the giving of notice by mail is "complete upon the expiration of 5 days after mailing the notice." The statute further provides that "[p]roof of the giving of notice in either manner may be made by the certificate of a person 18 years of age or older, naming the person to whom notice was given and specifying the time, place, and manner of the giving of notice."[71] Thus, the primary purpose of a certificate of mailing, at the time that it is created, is to establish "proof of the giving of notice" in accordance with the DOS's statutorily authorized bureaucratic responsibilities.

Accordingly, because the certificate of mailing was necessarily generated before the charged crime could be committed, it was not *made under circumstances* that would lead an objective witness reasonably to believe that it would be available for use at a later trial. At the time the certificate was created, there was no expectation that defendant would violate the law by driving with a revoked driver's license and therefore no

---

[69] MCL 257.303(2)(c) provides that the Secretary of State "shall revoke" the license of a driver who has two alcohol-related driving convictions within seven years and shall not issue a new license for at least one year under MCL 257.303(4).

[70] Black's Law Dictionary (6th ed).

[71] MCL 257.212.

indication that a later trial would even occur. Thus, the Court of Appeals majority wrongly assumed that "the certificate of mailing is testimonial because it *will* be used for the purpose of proving or establishing some fact at trial."[72] Instead, as Judge SAAD noted in his dissent, it does not follow that simply because a statement relates to an element of the crime it must be testimonial.[73]

Unlike *Crawford* or its progeny, the evidence at issue in this case was not prepared as a result of a criminal investigation or created after the commission of the crime. Rather, the DOS generates certificates of mailing contemporaneously with the notices that are mailed to drivers whose licenses have been suspended or revoked. Again, under no circumstances could the drivers whose licenses have been suspended or revoked be charged with DWLS before having received the notice of the suspension or revocation. In our view, the distinction makes "all the difference in the world"[74] because the certificate was not and could not have been created in anticipation of a prosecution because no crime had yet occurred. Because "[c]riminal activity, by its deviant nature, is normally unforeseeable,"[75] and persons "may reasonably proceed upon the assumption that others will obey the criminal law,"[76] we cannot assume that the certificate of mailing

---

[72] *Nunley*, 294 Mich App at 291 (emphasis added).

[73] *Id*. at 298 (SAAD, P.J., dissenting).

[74] *Melendez-Diaz*, 557 US at ___; 129 S Ct at 2539.

[75] *Papadimas v Mykonos Lounge*, 176 Mich App 40, 46-47; 439 NW2d 280 (1989), citing Prosser & Keaton, Torts (5th ed), § 33, p 201.

[76] Prosser & Keaton, Torts (5th ed), § 33, p 201.

in regard to defendant or any other person would be used at a later trial.  In other words, the certificates of mailing may be comfortably classified as business records "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial[.]"[77]  Accordingly, we conclude that the context and circumstances of the creation of the certificate of mailing reflect that it is nontestimonial.

## C.  ADDITIONAL SUPPORTING AUTHORITY

Caselaw from the other two states that have reviewed this precise question provides additional support for our conclusion that the certification of mailing at issue is not testimonial.  In *State v Murphy*, the Maine Supreme Judicial Court considered a certificate-notice system, seemingly identical to the one our DOS uses, in which notice was also a necessary element of the charge of operating while the person's license was suspended or revoked under the laws of Maine.[78]  Examining *Crawford* and *Melendez-*

[77]*Melendez-Diaz*, 557 US at ___; 129 S Ct at 2539-2540.  We note that our analysis is consistent with the reasoning of both the lead opinion and the dissenting opinion from the United States Supreme Court's recent plurality decision in *Williams*.  Consistently with the reasoning of the lead opinion, *Williams*, 567 US at ___; 132 S Ct at 2242-2244, the primary purpose of the certificate of mailing was not to accuse a targeted individual of engaging in criminal conduct.  Instead, because the certificate is necessarily generated before the commission of any crime, there is no one to accuse of criminal conduct. Further, consistently with the reasoning of the dissenting opinion, *id*. at ___; 132 S Ct at 2273-2274 (Kagan, J., dissenting), the primary purpose of the certificate of mailing was not to produce evidence for a later criminal prosecution.  Although the dissenting opinion differed with the lead opinion in its view that "it makes not a whit of difference whether, at the time of the [creation of the evidence], the police already have a suspect," *id*. at ___; 132 S Ct at 2274, the circumstances here would not lead an objective witness to reasonably believe that the certificate of mailing would be available for use at a later trial because no crime had been committed at the time the certificate was generated and no investigatory procedure had begun.

[78] *State v Murphy*, 2010 ME 28, ¶¶ 1-5; 991 A2d 35, 35-37 (Me, 2010).

*Diaz*, the court stated that "[r]ead expansively, *Melendez-Diaz* might be construed as requiring us to conclude that [the certificate] is testimonial . . . , [but] we are not persuaded to embrace that construction." [79] The court set forth several reasons for its holding. First, the court stated that the facts in *Melendez-Diaz* did not involve the type of certificate at issue in *Murphy* and, thus, *Melendez-Diaz* did not control the outcome.[80] Second, the court reasoned that unlike the certificates of analysis in *Melendez-Diaz*, which "substituted for live, in-court expert testimony prepared in an effort to secure the defendant's criminal conviction," the certificates at issue in *Murphy* did "not involve expert analysis or opinion."[81] Instead, the certificates merely reported neutral information from the Maine Secretary of State, who was charged with the custody of that information.[82] Moreover, the certificates did not "contain 'testimony' of the Secretary of State's personal knowledge that the required notice of suspension was mailed; rather, the certificate attests to his or her knowledge of what routinely-maintained public records indicate."[83] Third, the court stated that "neither the certificate nor the records to which it refers are primarily maintained and employed for purposes of criminal prosecution. Identical certificates are routinely prepared for nonprosecutorial purposes, such as

---

[79] *Id*. at ¶ 19; 991 A2d at 41-42.

[80] *Id*. at ¶ 20; 991 A2d at 42.

[81] *Id*. at ¶ 21; 991 A2d at 42.

[82] *Id*.

[83] *Id*.

administrative motor vehicle proceedings and insurance-related inquiries."[84]  Lastly,

unlike the certificates of analysis in *Melendez-Diaz*, "[b]ecause neutral, bureaucratic

information from routinely maintained public records is not obtained by use of

specialized methodology, there is little, if any, practical benefit to applying the crucible

of cross-examination against those who maintain the information."[85]

The Massachusetts Supreme Judicial Court also ruled on this issue in

*Commonwealth v Parenteau*.[86]  In *Parenteau*, the request by the police or the prosecution

for the certificates attesting to the mailing of the notice at issue occurred *after* defendant

had committed the crime.[87]  On those facts, the court held that "the certificate was created

exclusively for trial so the Commonwealth could prove a fact necessary to convict him"

and thus it was testimonial.[88]  The court, however, stated that like the notice itself, if the

certificate had been created at the time that the notice was sent, it would have been a

business record and thus nontestimonial, reasoning:

> [T]here is no evidence of the existence of a contemporaneous
> business record showing that the notice was mailed on that date.  If such a
> record had been created at the time the notice was mailed and preserved by
> the registry as part of the administration of its regular business affairs, then
> it would have been admissible at trial.  That would have been the correct
> procedure for the admission of a business record from the registry. . . .
> [However, the actual certificate used here] was not created as part of the

---

[84] *Id*. at ¶ 22; 991 A2d at 42.

[85] *Id*. at ¶ 24; 991 A2d at 43.

[86] *Commonwealth v Parenteau*, 460 Mass 1; 948 NE2d 883 (2011).

[87] *Id*. at 8.

[88] *Id*. at 5.

administration of the registry's regular business affairs, but for the purpose of establishing an essential fact at trial. Accordingly, the registry certificate did not constitute a nontestimonial business record.[89]

Both *Murphy* and *Parenteau* provide support for our conclusion that the certificate of mailing here is not testimonial. Significant in both cases were the circumstances under which the certificates were created. The timing of the certificates' creation, who requested that creation or how they were generated, and the information therein all informed the decisions in those cases. In *Murphy*, the circumstances showed that the creation of the certificate was for purposes other than prosecution, while in *Parenteau*, the creation of the certificate was made at the request of law enforcement after the crime had been committed. In the instant case, the certificate of mailing was necessarily created before the crime was committed as part of the legislatively permitted administrative function of the DOS and was akin to the neutral records largely maintained as a part of a bureaucratic purpose in *Murphy*. Thus, the certificate of mailing here is like the hypothetical business record contemplated in *Parenteau*, but the opposite of the actual certificate at issue in *Parenteau*, which "was not created as part of the administration of the registry's regular business affairs, but for the purpose of establishing an essential fact at trial."[90]

Moreover, analogous federal cases addressing illegal reentry into the United States provide additional support for our conclusion that the certificate of mailing is not testimonial. Federal law prohibits the reentry of an alien after the alien has been

---

[89] *Id*. at 10.

[90] *Id*.

previously deported.[91]  To prove an essential element of this crime, the prosecution will introduce into evidence a warrant of deportation.  In this document, an immigration official attests that he or she witnessed the defendant's previous deportation.  Subsequently, if the defendant is found within the United States and is prosecuted for illegal reentry, federal courts have consistently ruled that the warrant is admissible without accompanying testimony to prove that the defendant had been deported.[92]  Concluding that a warrant of deportation is not testimonial, the United States Court of Appeals for the Eleventh Circuit stated:

> We are persuaded that a warrant of deportation does not implicate adversarial concerns in the same way or to the same degree as testimonial evidence.  A warrant of deportation is recorded routinely and not in preparation for a criminal trial.  It records facts about where, when, and how a deportee left the country.  Because a warrant of deportation does not raise the concerns regarding testimonial evidence stated in *Crawford*, we conclude that a warrant of deportation is non-testimonial and therefore is not subject to confrontation.[93]

This conclusion is representative of the manner in which the United States Courts of Appeals for other circuits have reasoned.

We find this analogous line of federal decisions persuasive.  Like the certificate of mailing certifies that defendant had been sent notice of the suspension of his license, the

---

[91] See 8 USC 1326.

[92] See *United States v Cantellano*, 430 F3d 1142 (CA 11, 2005); *United States v Torres-Villalobos*, 487 F3d 607 (CA 8, 2007); *United States v Bahena-Cardenas*, 411 F3d 1067, 1074-1075 (CA 9, 2005); *United States v Valdez-Maltos*, 443 F3d 910, 911 (CA 5, 2006); *United States v Garcia*, 452 F3d 36 (CA 1, 2006).

[93] *Cantellano*, 430 F3d at 1145.

warrant of deportation is a warrant certifying that the defendant had been deported. In both instances, these documents were recorded routinely *before* any criminal activity took place. And neither implicates "adversarial concerns in the same way or to the same degree as testimonial evidence," because they are "recorded routinely and not in preparation for a criminal trial."[94] Moreover, just as the warrants of deportation are created under "circumstances objectively indicating that their primary purpose is to maintain records concerning the movements of aliens and to ensure compliance with orders of deportation, not to prove facts for use in future criminal prosecutions,"[95] the certificates of mailing are created under circumstances objectively indicating a purpose to ensure the maintenance of records indicating that the DOS has carried out its authorized function of notifying persons convicted of certain driving offenses that their driver's licenses have been suspended.

## IV. CONCLUSION

Because we conclude that the certificate of mailing at issue is not testimonial, its admission into evidence without accompanying testimony will not violate the

---

[94] *Id*.

[95] *Torres-Villalobos*, 487 F3d at 613.

Confrontation Clause.  Accordingly, we reverse the judgment of the Court of Appeals and remand this case to the district court for further proceedings consistent with this opinion.

                                        Brian K. Zahra
                                        Robert P. Young, Jr.
                                        Michael F. Cavanagh
                                        Marilyn Kelly
                                        Stephen J. Markman
                                        Mary Beth Kelly


     HATHAWAY, J.  I concur in the result only.

                                        Diane M. Hathaway