# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DUANE LAMAR WILLIAMS,

        Defendant-Appellant.

UNPUBLISHED
February 10, 2015

No. 318856
Wayne Circuit Court
LC No. 13-002478-FC

Before: CAVANAGH, P.J., and METER and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of second-degree murder, MCL 750.317, felony murder, MCL 750.316(1)(b), and first-degree arson, MCL 750.72(1)(b). We affirm.

This case arises from two arson-related deaths occurring on August 20, 2012, at a home in Detroit. Bobby Cross lived at the home with girlfriend Janet Smith and his stepson, Darryl Simms. Defendant is Janet's son. Defendant and his wife also lived at Bobby's home. Bobby's daughter, Jacqueline Cross, lived at the home immediately next door with her daughter Shameka Cross.

Around 11:00 p.m. on August 19, 2012, Jacqueline visited Bobby's home and saw Bobby and defendant engaged in an argument. Bobby wanted defendant to pay rent, but defendant refused. Later that night, Shameka woke to the sound of Janet arguing with defendant. Janet told Shameka that Bobby was trying to shoot defendant. Around 5:00 a.m. on the morning of August 20, 2012, Shameka again heard yelling. She looked out a window and saw fire in the front porch area of her grandfather's house. She called 9-1-1. Bobby and Darryl died in the fire.

When Janet arrived at the scene she told police, "I can't believe this. I think my son set the house on fire." At trial, Bobby's friend Lawrence Ingram testified that defendant once threatened to "burn this b---h out," referring to Bobby's house. Darryl's sister Deborah Simms also testified that defendant threatened to "f—k up" the house. Gary Jennings, a friend of defendant's and an inmate at the Wayne County Jail, informed police that defendant confessed to setting the fire during a conversation with Jennings.

Medical Examiner Dr. Allecia Wilson testified about the autopsies she performed on Bobby and Darryl. The victims died of smoke and soot inhalation and she initially concluded

-1-

that their deaths were accidental. However, after the police informed her that the fire had been intentionally set, Wilson changed the manner of death in her autopsy reports to homicide. Another doctor, Dr. Lokman Sung, signed separate "Supplemental Report[s] for a Pending Certificate of Death," also changing the manner of death for each victim. Wilson's original reports were admitted into evidence with Sung's supplemental reports attached as amendments. Sung did not testify at trial.

On appeal, defendant argues that Wilson's testimony about Sung signing the supplemental reports violated his right to confront adverse witnesses. We disagree. Because defendant did not object to Wilson's testimony at trial, this issue is unpreserved. See *People v Coy*, 258 Mich App 1, 12; 669 NW2d 831 (2003). Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

The United States and the Michigan Constitutions guarantee a criminal defendant the right to confront adverse witnesses. *People v Fackelman*, 489 Mich 515, 524-525; 802 NW2d 552 (2011), citing US Const, Am VI; Const 1963, art 1, § 20. Out of court testimonial statements are inadmissible under the Confrontation Clause unless the witness appears at trial, or the defendant had prior opportunity to cross-examine the witness. *People v Nunley*, 491 Mich 686, 698; 821 NW2d 642 (2012), citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Autopsy reports are testimonial in nature and may not be introduced against the defendant at trial unless the witness who made the report is unavailable and the defendant had a prior opportunity for cross-examination. See *People v Lewis*, 490 Mich 921; 806 NW2d 295 (2011).

Here, Wilson performed the autopsies and initially concluded in her autopsy reports that the manner of death for each victim was accidental. Upon learning from police that the fire was intentionally set, Wilson changed the manner of death recorded on her autopsy reports from accidental to homicide. Wilson further testified that Sung, who had signed the death certificates, also filed a supplemental report similarly changing the manner of death for each victim. Defendant argues that "Dr. Wilson's testimony about Dr. Sung, and his conclusions and changes made to his certificates, violated [defendant's] Sixth Amendment right of confrontation." But defendant mischaracterizes Wilson's testimony. Wilson testified:

> In our field, our standard is in terms of fires caused by arson. If the investigation deems that arson was the cause of the fire, and that fire resulted in the death of a person, then the manner of death is corrected to homicide.

Wilson testified that she and Sung changed the manner of death on the autopsy reports and death certificates as a matter of routine practice to conform to the results of the police investigation of the fire. She did not testify that Sung formed any opinion regarding the manner of the victims' deaths. And Wilson had firsthand knowledge of Sung's reasons for signing the supplemental reports. Accordingly, there was no error, plain or otherwise, in admitting Wilson's challenged testimony. And defendant's ineffective assistance of counsel claim premised on this argument is also without merit. "Trial counsel is not required to advocate a meritless position." *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

But even if the admission of Wilson's testimony in this regard constituted plain error, defendant has not established that such error affected his substantial rights. See *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). In brief, Jacqueline, Shameka, Ingram, and Deborah all testified that defendant and Bobby argued frequently, and that Bobby did not want defendant living in his home without paying rent. Jacqueline, Shameka, and Deborah also understood that defendant physically struck Bobby during a pervious argument. Ingram and Deborah testified that defendant made threats to burn or "f--k up" Bobby's house. Janet told police immediately after the fire, "I think my son set the house on fire." Jennings also testified that defendant told him that he had intentionally set the fire. In light of the record evidence, defendant has not demonstrated prejudice from the alleged error, i.e., that the error affected the outcome of the trial. See *id*.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Patrick M. Meter
/s/ Douglas B. Shapiro