*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

FOR PUBLICATION
September 10, 2020
9:05 a.m.

Plaintiff-Appellant,

v

No. 350391
Oakland Circuit Court
LC No. 2019-175232-AR

ALTON FONTENOT, JR.,

Defendant-Appellee.

Before: MURRAY, C.J., and RONAYNE KRAUSE and TUKEL, JJ.

TUKEL, J.

The prosecution appeals by leave granted[1] the circuit court's order denying the prosecution's interlocutory application for leave to appeal, which seeks a declaration that DataMaster logs, which are generated through breath tests administered by police officers conducting alcohol-related investigations, are both nontestimonial under the Confrontation Clause of the Sixth Amendment and admissible as business records under MRE 803(6). This appeal is being decided without oral argument pursuant to MCR 7.214(E)(1). We vacate.

## I. FACTS

On October 3, 2017, Michigan State Police Trooper Jon Gjurashaj conducted a traffic stop of a car driven by defendant in Royal Oak, Michigan because the front passenger was not wearing a seatbelt. Upon approaching the car, Trooper Gjurashaj saw that defendant had bloodshot and glassy eyes and droopy eyelids; Trooper Gjurashaj smelled an odor of alcohol coming from the car and defendant's mouth. After defendant failed to pass field sobriety tests, Trooper Gjurashaj arrested defendant for operating under the influence of alcohol. Defendant was then taken to a Michigan State Police post and given two DataMaster breath tests; both tests revealed a 0.09 BAC. In September 2017 and December 2017, Marvin Gier, the Class IV operator who conducted the 120-day tests on the DataMaster, inspected the particular machine used on defendant, verified its

---

[1] *People v Fontenot*, unpublished order of the Court of Appeals, entered September 25, 2019 (Docket No. 350391).

accuracy, and certified that it was in proper working order, which is reflected in the DataMaster logs.

The prosecution filed a pretrial motion in limine in the district court to declare that the DataMaster logs are nontestimonial under the Confrontation Clause and admissible as business records under MRE 803(6); those declarations would have made it unnecessary for the prosecution to call Gier as a witness at trial. The district court denied the prosecution's motion in limine and stayed the trial pending the prosecution's appeal to the circuit court. On appeal, the circuit court concluded that it was proper for the district court to deny the prosecution's motion in limine because

> even assuming without deciding that the statements made by Marvin Gier were nontestimonial, the Court fails to see how it could reverse the trial court's June 25, 2019 Order when the People failed to present evidence before the trial court to support that the records in question amounted to business records. . . . Rather, the People appear to have merely promised to present such evidence at trial.

This appeal followed.

## II. ANALYSIS

The prosecution argues that the DataMaster logs are nontestimonial and admissible as business records under MRE 803(6). We agree with both propositions.

### A. STANDARD OF REVIEW

"The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion." *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). Furthermore, "[a] trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566-567; 876 NW2d 826 (2015). "To the extent that the trial court's ruling involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *People v Tanner*, 496 Mich 199, 205; 853 NW2d 653 (2014) (quotation marks and citation omitted).

### B. CONFRONTATION CLAUSE

The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." US Const, Am. VI. In *Crawford v Washington*, 541 US 36, 50-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004), the United States Supreme Court held that, under the Confrontation Clause, out-of-court testimonial statements are inadmissible against a criminal defendant unless the declarant is unavailable and the defendant has had a previous opportunity to cross-examine the declarant. In *Crawford*, the Court left

> for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior

testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." [*Id*. at 68 (footnote omitted).]

Pretrial statements are testimonial if the declarant would reasonably expect that the statement will be used in a prosecutorial manner and if they were made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Id*. at 51-52 (citation and quotation marks omitted).

The United States Supreme Court later narrowed the scope of what constitutes a testimonial statement in a plurality opinion in *Williams v Illinois*, 567 US 50; 132 S Ct 2221; 183 L Ed 2d 89 (2012).[2] In *Williams*, Justice ALITO, writing for a four-justice plurality, held that testimonial statements have two characteristics: "(a) they involve[] out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct and (b) they involve[] formalized statements such as affidavits, depositions, prior testimony, or confessions." *Id*. at 82. Our Supreme Court adopted the *Williams* primary purpose confrontation clause analysis in *People v Nunley*, 491 Mich 686; 821 NW2d 642 (2012), when it held that a certificate of mailing was not a testimonial statement because the certificate of mailing's primary purpose was to establish that notice was given—not to be used at a later trial. See also *id*. at 706 ("Instead, we believe that the circumstances under which the certificate was generated show that it is a nontestimonial business record created primarily for an administrative reason rather than a testimonial affidavit or other record created for a prosecutorial or investigative reason.").

In *Nunley*, our Supreme Court additionally held that the circumstances under which a statement is given should be considered to determine whether a statement is testimonial. *Nunley*, 491 Mich at 706 ("[U]nder *Crawford* and its progeny, courts must consider the circumstances under which the evidence in question came about to determine whether it is testimonial."). For example, the certificate of mailing in *Nunley* was nontestimonial because it was "a routine, objective cataloging of an unambiguous factual matter, documenting that the [Department of State] has undertaken its statutorily authorized bureaucratic responsibilities." *Id*. at 707. Consequently, the certificate of mailing was "created for an administrative business reason and kept in the regular course of the [Department of State]'s operations in a way that is properly within the bureaucratic purview of a governmental agency" and, therefore, was not a testimonial statement.

Here, the DataMaster logs are nontestimonial. The DataMaster logs here were created before defendant's breathalyzer test to prove the accuracy of the DataMaster machine; they were not created for the purpose of prosecuting defendant specifically; thus, they did not "accus[e] a targeted individual of engaging in criminal conduct, *Williams*, 567 US at 82.

Furthermore, the DataMaster logs were also created as part of the Michigan State Police's normal administrative function of assuring that the DataMaster machine produces accurate results.

---

[2] "A plurality opinion of the United States Supreme Court, however, is not binding precedent." *People v Beasley*, 239 Mich App 548, 559; 609 NW2d 581 (2000).

The DataMaster would have been checked for proper functioning even if defendant had not been tested with it. Thus, the primary purpose of Gier testing the DataMaster's accuracy was to comply with administrative regulations, see Mich Admin Code R 325.2653(3), and to ensure its reliability for future tests—not to prosecute defendant specifically. As such, the DataMaster logs were nontestimonial and the trial court erred by holding that they were testimonial. See *Nunley*, 491 Mich at 706. See also *Melendez-Diaz v Massachusetts*, 557 US 305, 311 n 1; 129 S Ct 2527; 174 L Ed 2d 314 (2009) ("[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case.").

## C.  MRE 803(6)

Business records are admissible under MRE 803(6), which provides:

> A memorandum, report, record, or data compilation, in any form, of acts, transactions, occurrences, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with a rule promulgated by the supreme court or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

"The business records exception is based on the inherent trustworthiness of business records. But that trustworthiness is undermined and can no longer be presumed when the records are prepared in anticipation of litigation." *People v Jambor*, 273 Mich App 477, 482; 729 NW2d 569 (2007).

Here, the DataMaster logs are business records under MRE 803(6). The Michigan State Police keep the DataMaster logs "in the course of a regularly conducted business activity" and it is "the regular practice of that business activity to make the . . . record" as required by the administrative DataMaster regulations. MRE 803(6). Mich Admin Code R 325.2653(3) states:

> Approved evidential breath alcohol test instruments shall be inspected, verified for accuracy, and certified as to their proper working order within 120 days of the previous inspection by either an appropriate class operator who has been certified in accordance with R 325.2658 or a manufacturer-trained representative approved by the department.

Although the DataMaster logs are occasionally presented at trials, they are not prepared for the purpose of litigation, but rather, because the administrative regulations require the keeping of such a log. Thus, the logs are admissible under MRE 803(6).[3]

Our dissenting colleague believes that the circumstances surrounding the creation of the DataMaster logs in this case establish that they are untrustworthy and, therefore, that they cannot be admissible as business records. We disagree. MRE 803(6) addresses the trustworthiness of the type of document in question, not the specific document at issue in a given case. Whether the DataMaster logs at issue in this case were accurate has no effect on whether they are an actual business record. Indeed, a business record can certainly be inaccurate such as when a business intentionally creates inaccurate accounting statements for tax evasion purposes. Those records are certainly not trustworthy, but they certainly would be considered business records because they were created during the normal course of business. Whether those records are believed by the fact-finder is a question of the weight and credibility of the evidence for the fact-finder to decide. Such is the case here. Whether the DataMaster logs in this case are accurate and trustworthy is a question of the weight that the fact-finder should give to the DataMaster logs. See, e.g., *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002) ("It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences."). That is a separate question from whether they are admissible as business records. Thus, the DataMaster logs were admissible as business records. Defendant, however, may still challenge the reliability and credibility of the DataMaster logs. But that question is for the fact-finder to decide, not for the courts to decide in our gate keeping function when determining whether evidence is admissible.

## III. CONCLUSION

We vacate the district court's order denying the prosecution's motion in limine and remand to the district court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ Christopher M. Murray

---

[3] While the DataMaster logs are admissible as business records, this ruling does not prevent defendant from challenging the accuracy of DataMaster testing machine itself in the future. We express no opinion on that question, or on whether such a challenge would go to weight rather than admissibility of the evidence.