# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ERROLL RAMONE MILLINER,

Defendant-Appellant.

UNPUBLISHED
April 21, 2016

No. 325108
Wayne Circuit Court
LC No. 14-006670-FC

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JEQUIS TINA-DOMINIQUE MAYES,

Defendant-Appellant.

No. 325454
Wayne Circuit Court
LC No. 14-006670-FC

Before: BECKERING, P.J., and OWENS and K. F. KELLY, JJ.

PER CURIAM.

In this consolidated appeal, defendant, Erroll Ramone Milliner, appeals as of right in Docket No. 325108, his jury trial convictions of four counts of operating a motor vehicle while intoxicated (OWI) causing death, MCL 257.625(4), four counts of manslaughter with a motor vehicle, MCL 750.321, and four counts of operating a motor vehicle with a suspended license causing death, MCL 257.904(4). Defendant Milliner was sentenced on November 25, 2014, to consecutive sentences of 50 months to 15 years in prison for each count of OWI causing death, and concurrent sentences of 50 months to 15 years in prison for each count of manslaughter with a motor vehicle and operating with a suspended license causing death. We affirm.

In Docket No. 325454, defendant, Jequis Tina-Dominique Mayes, appeals as of right her jury trial convictions of four counts of OWI causing death and four counts of manslaughter with a motor vehicle. Defendant Mayes was sentenced on November 25, 2014, to consecutive sentences of 50 months to 15 years in prison for each count of OWI causing death, and

-1-

concurrent sentences of 50 months to 15 years in prison for each count of manslaughter with a motor vehicle.[1]  We affirm.

This case arises out of a motor-vehicle accident on I-94 in Detroit.  Defendants were in a dating relationship for approximately ten years and had two children together.  At the time of the incident, they were living together.  Mayes went out with her friends on the evening of September 21, 2013.  Mayes was in her car, a Chrysler 300, with three of her friends attempting to leave a house party in the early morning hours of September 22, 2013, when Milliner pulled up beside her in his Chevy Impala, and demanded that she get out of her car.  Fearing that he would abuse her, Mayes drove off.  Milliner followed her, which resulted in both defendants driving at a high rate of speed through residential streets.  Mayes eventually drove the wrong way down a one-way street, and Milliner continued to follow her.  There was a service drive for the expressway at the end of the one-way street.  Rather than turning onto the service drive, Mayes continued straight and her car hit the curb of the service drive, flew over the embankment of the expressway, and landed on top of an F-150 truck traveling on the expressway below.  All three occupants of the truck were killed, as well as one of the occupants in Mayes's car.  Both defendants were intoxicated at the time.

## I.  DOCKET NO. 325108

In Docket No. 325108, defendant Milliner first argues that the trial court violated his due process rights by denying his motion to sever his trial from codefendant Mayes's trial, or in the alternative, conduct a joint trial with separate juries.  We review a trial court's ruling on a motion to sever for an abuse of discretion, *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005), as well as its decision to use the dual-jury procedure, *People v Hana*, 447 Mich 325, 359; 524 NW2d 682 (1994), judgment amended in part on other grounds on reh sub nom *People v Gallina*, 447 Mich 1203 (1994) and *People v Rode*, 447 Mich 1203 (1994).

The right of severance is governed by MCR 6.121, which provides in relevant part,

> **(C) Right of Severance; Related Offenses.**  On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.

> **(D) Discretionary Severance.**  On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants.  Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial.

---

[1] The jury found both defendants not guilty of second-degree murder.

Pursuant to MCL 768.5[2] and MCR 6.121(D), generally, the decision to sever or join defendants for trial is within the trial court's discretion. *Hana*, 447 Mich at 346. MCR 6.121(C), however, mandates severance "only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *Id.* If a defendant fails to make this showing in the trial court, reversal of a trial court's decision to join defendants for trial is precluded "absent any significant indication on appeal that the requisite prejudice in fact occurred at trial." *Id.* at 346-347.

Defendant Milliner moved to sever his trial from codefendant Mayes's trial, asserting that their defenses were "blame-shifting in nature" and would prevent the jury from a making a reliable judgment about guilt or innocence, but he failed to provide a supporting affidavit or offer of proof that clearly, affirmatively, and fully demonstrated that his substantial rights would be prejudiced by a joint trial. *Id.* at 346. Accordingly, reversal is precluded "absent any significant indication on appeal that the requisite prejudice in fact occurred at trial." *Id.* at 346-347.

Defendant Milliner argues that he was prejudiced by the joint trial because each defendant claimed that the other was the sole proximate cause of the accident, and therefore, the jury had to believe one defendant at the expense of the other. The *Hana* Court held that inconsistent defenses and "incidental spillover prejudice" do not mandate severance. *Id.* at 349 (internal quotation marks and citation omitted). Rather, "the defenses must be mutually exclusive or irreconcilable," meaning that the "tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." *Id.* (internal quotation marks and citations omitted). In other words,

> "It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." [*Id.* at 349-350, quoting *State v Kinkade*, 140 Ariz 91, 93; 680 P 2d 801, 803 (1984).]

There is no "significant indication" that the requisite prejudice occurred at trial in this case. *Id.* at 346-347. Mayes did not contest that she was driving recklessly. Rather, her defense was that but for Milliner's assault creating fear in her, she would not have driven recklessly;

---

[2] MCL 768.5 provides: "When 2 or more defendants shall be jointly indicted for any criminal offense, they shall be tried separately or jointly, in the discretion of the court."

whereas Milliner argued he did not assault Mayes. He claimed that he was simply trying to talk to her and only followed her, and it was her actions of driving recklessly that caused the accident. These defenses were not irreconcilable. Although defendants naturally pointed their fingers at each other, a jury would not have to believe one defendant at the expense of the other. *Id.* at 349.

For example, the jury could have believed the testimony supporting Mayes's defense that but for Milliner's threatening behavior and alleged pursuit, she would not have driven at a high rate of speed in an attempt to get away from him and the accident could have been avoided, thus acquitting her and finding Milliner guilty. At the same time, however, the jury could have determined that although Milliner allegedly pursued Mayes, she chose to drive the wrong way down a one-way street at approximately 70 miles per hour, rather than driving the lawful speed and calling the police and her actions of driving recklessly also caused the accident, thus finding her guilty as well. Additionally, the jury could have believed the testimony supporting Milliner's defense that he was merely following Mayes and that it was Mayes's reckless driving while intoxicated that caused the accident, thus acquitting him and finding Mayes guilty. At the same time, however, the jury could have determined that if Milliner had not followed Mayes, she would not have driven recklessly, and together, their actions caused the accident, thus finding them both guilty.

Further, even if defendants had separate trials, the same evidence would have been admitted at both trials because the evidence presented at trial was admissible against both defendants. See *Hana*, 447 Mich at 356. Finally, the jury was instructed to consider each defendant's case separately, and "the jury could reasonably be expected to compartmentalize the evidence pertaining to each defendant." *Id.* Therefore, the trial court did not abuse its discretion by declining to sever defendants' trials or order separate juries.

Defendant Milliner next argues that the trial court denied his right to confront the witnesses against him when it allowed a police officer to testify to statements made at the accident site by eyewitnesses who did not appear at trial and who defendant did not have a prior opportunity to cross-examine. Because Milliner did not object to the error at trial based on constitutional grounds, our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). Under the plain error rule, a defendant is required to show that an error occurred, the error was obvious, and the error prejudiced the defendant in that it affected the outcome of the lower court proceedings. *Id.* at 763.

The Confrontation Clause of the Sixth Amendment, adopted by the Michigan Constitution, Const 1963, art 1, § 20, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." US Const, Am VI. The Confrontation Clause of the Sixth Amendment is meant to protect defendants from hearsay evidence that is testimonial in nature. *Crawford v Washington*, 541 US 36, 50-51; 124 S Ct 1354; 158 L Ed 2d 177 (2004). See also *People v Nunley*, 491 Mich 686, 697-698; 821 NW2d 642 (2012). Out-of-court testimonial statements are inadmissible at trial unless the declarant appears at trial or the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 US at 53-54, 68; *Nunley*, 491 Mich at 698. "Whether formal or informal, out-of-court statements can evade the basic objective of the Confrontation Clause, which is to prevent

-4-

the accused from being deprived of the opportunity to cross-examine the declarant about statements taken for use at trial." *Michigan v Bryant*, 562 US 344, 358; 131 S Ct 1143; 179 L Ed 2d 93 (2011).

The United States Supreme Court in *Crawford* did not comprehensively define "testimonial," but stated that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 US at 68. The Court expanded on the definition of testimonial in *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006), explaining,

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

To determine whether the primary purpose of an interrogation is to enable police assistance to meet an ongoing emergency, this Court must "objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Bryant*, 562 US at 359. "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.* at 360. Importantly, the *Bryant* Court recognized that "although formality suggests the absence of an emergency," statements made during informal police interrogations do not "necessarily indicate the presence of an emergency or the lack of testimonial intent." *Id.* at 366.

Defendant Milliner challenges Detroit Police Officer Anthony Bryd's testimony that he overheard two eyewitnesses tell an unidentified Michigan State Police (MSP) trooper that "there was a silver car chasing the Chrysler 300" and "it went over the embankment on top of the pickup truck." These statements were clearly out-of-court statements, the declarants did not appear at trial, and Milliner did not have a prior opportunity to cross-examine the declarants. Additionally, the eyewitnesses' statements were used as substantive evidence against Milliner, the accused, as they were clearly offered to show that defendant Milliner was "chasing," rather than merely following, Mayes, and his act of chasing Mayes caused her vehicle to go over the embankment and land on top of the truck. See *Crawford*, 541 US 51-52 (noting that the protections of the Confrontation Clause only cover witnesses who bear testimony against the accused), and *Nunley*, 491 Mich at 697 (stating that the Confrontation Clause only applies to statements used as substantive evidence, rather than for impeachment purposes).

The primary question on appeal is whether the statements were testimonial, as to violate the Confrontation Clause. The objective circumstances in this case indicate that the questions and statements made were not asked and answered to be able to resolve the present emergency. Rather, they were to simply learn what had happened in the past. *Bryant*, 562 US at 367, citing *Davis*, 547 US at 827. Although the interrogation, or questioning, of the eyewitnesses was more informal, in that it occurred on the side of the highway at the scene of the accident, the objective

circumstances do not indicate the presence of an emergency or the lack of testimonial intent. *Id.* at 366. Specifically, at least 15 minutes had passed since the accident occurred, and the accident was in the clean-up stage. The highway had been blocked off and the scene secured with the arrival of the first MSP trooper, Charles Sierzputowski. The testimony of the other MSP troopers and Detroit police officers who assisted at the scene indicates that by the time they arrived, the victims that survived the accident had been removed from the scene. Although the three victims in the truck were still present, they had been declared dead, and were waiting to be extracted from the vehicle. There is no indication that other vehicles were involved in the accident, such as a hit-and-run suspect, and according to Sierzputowski's testimony, defendant Milliner had left the scene shortly after the accident to see Mayes at the hospital. The record indicates that the MSP trooper was interviewing witnesses to determine what exactly happened when Bryd overheard the statements. Bryd's testimony left the impression that upon his arrival, he was merely walking the scene of the accident to determine where he could be of assistance, and there was no present emergency to attend to the victims or search for a potential suspect. Reasonable participants in the eyewitnesses' situation likely would have known that the purpose of the MSP trooper's questions was to investigate the accident and prove past events potentially relevant to later criminal prosecution, rather than to meet an ongoing emergency.

Further, the *Bryant* Court recognized that "there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony." *Bryant*, 562 US at 358. The *Bryant* Court stated that to determine whether the primary purpose of a statement is testimonial, "standard rules of hearsay, designed to identify some statements as reliable, will be relevant." *Id.* at 358-359. See also *Ohio v Clark*, ___ US ___; 135 S Ct 2173, 2180; 192 L Ed 2d 306 (2015). In this case, the trial court allowed the statements, citing MRE 803(1) (present sense impression) and MRE 803(2) (excited utterance). A review of the record, however, indicates that the statements at issue do not possess sufficient indicia of trustworthiness and reliability to justify their admission as a present sense impression or excited utterance.

To be admissible as a present sense impression, "(1) the statement must provide an explanation or description of the perceived event, (2) the declarant must personally perceive the event, and (3) the explanation or description must be 'substantially contemporaneous' with the event." *People v Hendrickson*, 459 Mich. 229, 236, 586 N.W.2d 906 (1998) (opinion by Kelly, J.) (citation omitted). According to Officer Bryd, "15 minutes or so" had passed from the time the accident occurred to the time the eyewitnesses gave their statements, which is enough time to raise doubts about the witnesses' memories. See *US v Narciso*, 446 F Supp 252, 288 (1976), quoting 5 Weinstein & Berger, Evidence, ¶ 803(1)[01] (1975) (noting that one rationale behind the present sense impression hearsay exception is that there is little or no time for calculated misstatement when the statement is simultaneous with the event). Although this Court has previously held that a statement made 15 minutes after a perceived event was admissible as a present sense impression, *People v Chelmicki*, 305 Mich App 58, 63; 850 NW2d 612 (2014), in this case, the witnesses' statements were made in response to police questioning, and were not impulsive or spontaneous. See FRE 803(1), advisory committee note (stating that "[s]pontaneity is the key factor" in determining whether a statement is admissible as a present sense impression); *United States v Woods*, 301 F 3d 556, 562 (CA 7, 2002) ("A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of

events rather than near simultaneous perceptions."). Therefore, given the time lapse between the accident and the statements and the fact that the statements were solicited by the MSP trooper, they lack the trustworthiness to be admissible as a present sense impression.

Additionally, an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). The circumstances suggest that although the eyewitnesses were still excited and emotional, they were responding to the MSP trooper's questions and had time to reflect on the accident, which indicates the capacity to fabricate. See *People v Smith*, 456 Mich 543, 553; 581 NW2d 654 (1998) (stating that "whether a statement made in response to questioning should be excluded under MRE 803(2) depends on the circumstances of the questioning and whether it appears that the statement was the result of reflective thought); *People v Kreiner*, 415 Mich 372, 379; 329 NW2d 716 (1982) (internal quotation marks and citation omitted) (stating that an excited utterance must be "spontaneous and unreflecting" and "made before there has been time to contrive and misrepresent"). Therefore, given the time lapse between the accident and the statements and the fact that the witnesses were responding to the MSP trooper's questions and describing what occurred, there is a greater likelihood that the statements were the result of reflective thought and lack the necessary reliability to be admitted as an excited utterance.

"In the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Clark*, ___ US at ___; 135 S Ct at 2180, quoting *Bryant*, 562 US at 358. In this case, the conversation was aimed at investigating the accident and proving past events to establish evidence for prosecution. Therefore, the circumstances indicate that the primary purpose of the conversation was to create an out-of-court substitute for trial testimony, and thus, the eyewitnesses' statements were testimonial.

Nevertheless, upon thoroughly examining the entire record, we conclude that admission of the statements was harmless beyond a reasonable doubt. *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005). Milliner argues that the eyewitnesses' statements were the only evidence that he was in fact chasing Mayes. However, Angela Gilmore, one of Mayes's passengers, testified that Milliner was one to three feet behind Mayes's car and she was scared he was going to hit the car. The damage to Milliner's vehicle indicates that he, too, hit the curb at a high rate of speed, but he was fortunately able to stop his vehicle on top of the embankment. Mayes also testified that she thought Milliner was going to crash into her car. She testified regarding a letter Milliner wrote her after the accident in which he admitted that he was wrong, that he was trying to scare her, and that he was driving his vehicle knowing that he would scare her. Therefore, it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the Confrontation Clause error.

Alternatively, defendant Milliner argues that he is entitled to relief because defense counsel was ineffective for failing to object to the eyewitnesses' statements based on Confrontation Clause grounds. This claim, however, does not warrant relief. Although defense counsel clearly should have objected to the evidence as testimonial hearsay in violation of the Confrontation Clause, the error is not outcome determinative. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); see also *People v Vaughn*, 491 Mich 642, 669;

-7-

821 NW2d 288 (2012). Defendant is required to show that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Id.* As discussed, the error is harmless beyond a reasonable doubt, and for those reasons, defendant is unable to prove the result of the proceedings would have been different to warrant relief on ineffective assistance of counsel grounds.

Defendant Milliner next argues that the trial court denied him his right to present a defense by excluding evidence of Mayes's driving record. We review a trial court's decision whether to admit or exclude evidence for an abuse of discretion. *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). We review de novo preliminary questions of law, such as whether a rule of evidence precludes admission, *id.*, as well as the question whether a defendant was denied his or her constitutional right to present a defense. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

While a criminal defendant has a constitutional right to present his or her defense, a defendant's right to present evidence in his defense is not absolute. *People v Unger*, 278 Mich App 210, 249-250; 749 NW2d 272 (2008). Rules of evidence, for example, help to ensure the integrity of criminal trials and do not interfere with a defendant's right to present a defense. See, e.g, *id.* at 250 (holding that the exclusion of evidence under MRE 402 and MRE 703 did not deny the defendant the right to present a defense). In this case, Defendant Milliner sought to introduce Mayes's driving record involving a July 14, 2010 citation for a prohibited turn and no proof of insurance, and an October 19, 2012 citation for disobeying a traffic signal. The admissibility of other-acts evidence is governed by MRE 404(b)(1), which provides,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

To admit Mayes's driving record under MRE 404(b), defendant Milliner was first required to show that the evidence was relevant to a proper noncharacter purpose under MRE 404(b)(1). *Mardlin*, 487 Mich at 615-616. Relevance involves two components: materiality and probative value. *People v Crawford*, 458 Mich 376, 388; 582 NW2d 785 (1998). "Materiality is the requirement that the proffered evidence be related to 'any fact that is of consequence' to the action." *Id.* "The probative force inquiry asks whether the proffered evidence tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Id.* at 389-390. Any tendency is sufficient, but under MRE 404(b), the evidence "truly must be probative of something *other* than the defendant's propensity to commit the crime." *Id.* at 390.

Defendant Milliner argued that evidence of Mayes's driving record was probative to show that Mayes had a similar intent of driving recklessly and disobeying traffic laws and it was that recklessness, rather the Milliner's alleged close pursuit, which caused Mayes to drive off the embankment onto the expressway. However, Mayes's prior citations for making a prohibited

-8-

turn, having no proof of insurance, and disobeying a traffic signal did not have a tendency to show that Mayes had the intent to drive recklessly and disobey traffic laws on the night of the accident. *Id.* Rather, the factual relationship between Mayes's prior citations and her conduct in this case of driving the wrong way down a one-way street at a high rate of speed is too dissimilar or remote to draw a permissible inference of her intent to drive recklessly and disobey traffic laws and to overcome the improper inference of character. *Id.* at 395-396. Therefore, we conclude that the evidence of Mayes's driving record was inadmissible character evidence under MRE 404(b)(1), and its exclusion did not deny defendant Milliner of his right to present a defense.

Defendant Milliner next argues that he was denied the effective assistance of counsel when defense counsel failed to object to the erroneous jury instruction regarding the prior inconsistent statement of a witness. Ordinarily, "[t]he denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo." *People v Brown*, 279 Mich App 116, 140; 755 NW2d 664 (2008). However, because defendant failed to preserve the issue by raising it in a motion for a new trial or requesting an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973), our review is "limited to mistakes apparent from the record." *Brown*, 279 Mich App at 140. If the record does not support defendant's claims, then he has effectively waived the issue. *People v Sabin*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise. *Vaughn*, 491 Mich at 670. To establish that a defendant's trial counsel was ineffective, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland*, 466 US at 694; *Vaughn*, 491 Mich at 669. Defendant must also overcome the strong presumption that counsel's performance constituted sound trial strategy. *People v Dixon*, 263 Mich App 393, 396; 688 NW2d 308 (2004).

We must first determine whether the trial court erred when it read the jury instruction regarding the prior inconsistent statement of a witness. Gilmore, the witness at issue, testified at trial that Milliner "was right on us" and "real close" to the back of Mayes's car. She stated that he was approximately one foot behind the car, but could have been up to three feet, and she thought he was going to hit the car. At the preliminary exam and the investigative subpoena, however, when Gilmore was asked whether the car might have just been following them, she testified "yeah." Gilmore's prior inconsistent statement was admissible to impeach her and as substantive evidence because it fell within the hearsay exception provided in MRE 801(d)(2). See *People v Jenkins*, 450 Mich 249, 273; 537 NW2d 828 (1995) ("Extrinsic evidence of a prior inconsistent statement can be used to impeach but it cannot be used to prove the truth of the matter asserted, unless, of course, it falls within a hearsay exception."). Specifically, Gilmore made a prior statement under oath subject to the penalty of perjury at the preliminary

examination that was inconsistent with her trial testimony, and she was subject to cross-examination concerning that statement. MRE 801(d)(2). Accordingly, the proper instruction at trial would have been CJI2d 4.5(2),[3] which is used when an out-of-court statement is admissible both to impeach a witness and as substantive evidence, and therefore, the trial court erred by reading CJI2d 4.5(1),[4] which is used when a statement is admissible only for impeachment purposes.

Defense counsel's failure to object to the erroneous instruction prevented the jury from considering Gilmore's prior inconsistent statement as substance evidence. This fell below an objective standard of reasonableness, as we cannot determine any applicable trial strategy that would warrant the failure to object. Nevertheless, this error does not warrant relief, because defendant cannot show that but for defense counsel's error the outcome of trial would have been different.

Although Gilmore previously testified that defendant Milliner may have just been following Mayes, Gilmore testified at trial that she was fearful that an accident could occur based on the way that Milliner was driving behind them. At trial, she was able to estimate the distance at which Milliner's car was driving behind Mayes's car, and stated that Milliner was approximately one foot behind Mayes's car, but could have been up to three feet. Mayes also testified that she thought Milliner was going to crash into her car. Further, the evidence showed that the damage to Milliner's vehicle indicates that he, too, hit the curb at a high rate of speed. Therefore, there was sufficient evidence for a jury to conclude beyond a reasonable doubt that Milliner was driving his car at a high rate of speed closely behind Mayes.

## II. DOCKET NO. 325454

In Docket No. 325454, defendant Mayes first argues that the trial court denied her the right to present a defense by excluding evidence that she was a victim of domestic violence by defendant Milliner. Mayes argues that her actions of driving recklessly were motivated by her fear of the past physical abuse she endured from Milliner.

As discussed earlier, a defendant's right to present a defense is not infringed by MRE 402, which requires all admissible evidence to be relevant. *Unger*, 278 Mich App at 250. Relevant evidence "means evidence having any tendency to make the existence of any fact that

---

[3] CJI2d 4.5(2) states: Evidence has been offered that one or more witnesses in this case previously made statements inconsistent with their testimony at this trial. You may consider such earlier statements in deciding whether the testimony at this trial was truthful and in determining the facts of the case.

[4] CJI2d 4.5(1) states: If you believe that a witness previously made a statement inconsistent with [his/her] testimony at this trial, the only purpose for which that earlier statement can be considered by you is in deciding whether the witness testified truthfully in court. The earlier statement is not evidence that what the witness said earlier is true.

is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

Contrary to defendant Mayes's assertions at trial, she was attempting to use evidence of past abuse to show that her actions were not grossly negligent, but rather the result of duress. The law is clear that duress is not a defense to homicide. *People v Dittis*, 157 Mich App 38, 41; 403 NW2d 94 (1987); see also *People v Henderson*, 306 Mich App 1, 5; 854 NW2d 234 (2014). The rationale underlying this rule is that "one cannot submit to coercion to take the life of a third person, but should risk or sacrifice his own life instead." *Id.*

Further, defendant has not shown how evidence of past abuse would have any tendency to make any fact at issue in this case more or less probable. MRE 401. Defendant does not contest that she voluntarily drove while intoxicated the wrong way down a one-way street at a high rate of speed resulting in the deaths of four people. She merely argues that this behavior was justified by her fear of Milliner. Despite Milliner's alleged abusive conduct, defendant had other options available to her, such as driving at a lawful speed and calling the police, rather than to drive recklessly while intoxicated. See *People v Moseler*, 202 Mich App 296, 299; 508 NW2d 192 (1993) (finding that defense counsel was not ineffective for failing to introduce expert testimony regarding battered women's syndrome to show that the defendant's actions in driving recklessly and causing a death were the result of duress where, even though she was being chased by her abusive boyfriend, the defendant elected to drive recklessly rather than adopt other available options). The fact that she endured prior abuse is not a valid defense to the charged offenses. See *id.* (citing *Dittis* for the proposition that duress is not a valid defense to homicide). Therefore, the trial court's exclusion of this irrelevant evidence did not deny defendant the right to present a defense. *Unger*, 278 Mich App at 250-251.

Defendant Mayes next argues that the trial court erred by declining to give a jury instruction regarding an intervening, superseding cause. We review claims of instructional error de novo, examining the instructions as a whole to determine whether any error occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). We review for an abuse of discretion, however, a trial court's determination whether a jury instruction is applicable to the facts of the case. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *Kowalski*, 489 Mich at 501. In addition to all the elements of the charged offenses, jury instructions must also include any material issues, defense, and theories supported by the evidence. *Dobek*, 274 Mich App at 82. However, "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id.* at 501-502.

The prosecution in this case was required to prove that defendant's actions were both the factual cause and a proximate cause of the victim's death. The proximate cause determination requires the jury to determine "whether there was an intervening cause that superseded the defendant's conduct such that the causal link between the defendant's conduct and the victim's injury was broken." *People v Schaefer*, 473 Mich 418, 436-437; 703 NW2d 774 (2005), overruled in part on other grounds, *People v Derror*, 475 Mich 316, 334; 715 NW2d 822 (2006).

-11-

The "linchpin" in the superseding cause analysis "is whether the intervening cause was foreseeable based on an objective standard of reasonableness." *Id.* at 437.

As the prosecution correctly points out, there was nothing that intervened between defendant Mayes's conduct and the death of the victims. Milliner's reckless conduct in following so closely behind Mayes was not an intervening cause that superseded Mayes's conduct. While it may have caused her to drive recklessly down a one-way street, that was her choice. Milliner's conduct did not break the causal link between Mayes's reckless driving and the victims' deaths. Accordingly, the instruction was not warranted.

Finally, in Docket Nos. 325108 and 325454, both defendants argue that they are entitled to a new trial because one of the jurors allegedly visited the accident site and conducted a test drive while the trial was ongoing. We review for an abuse of discretion a trial court's decision to deny a motion for mistrial based on juror misconduct. *People v Messenger*, 221 Mich App 171, 175; 561 NW2d 463 (1997).

Embedded in a defendant's right to a fair and impartial jury is the rule that during deliberations the jury may only consider evidence presented in open court. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id.* An error predicated on the jury's consideration of extraneous facts will require reversal where the defendant proves that the jury was exposed to extraneous influences, and that the extraneous influences "created a real and substantial possibility that they could have affected the jury's verdict." *Id.* at 88-89. In proving that an extraneous influence created a real and substantial possibility of prejudice, the defendant must generally "demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id.* at 89. If the defendant establishes this initial burden, the burden then shifts to the prosecution to demonstrate that the error was harmless beyond a reasonable doubt. *Id.* An error in this context is harmless beyond a reasonable doubt if the extraneous influence was duplicative of the evidence presented at trial or the evidence of the defendant's guilt was overwhelming. *Id.* at 89-90.

We conclude that the trial court did not abuse its discretion by denying defendants' motion for a mistrial based on juror misconduct. First, as the trial court correctly determined, the only support for defendants' motion were the affidavits of Mayes's defense attorney and his paralegal. An attorney cannot testify to a juror's statements because that testimony is hearsay. *Budzyn*, 456 Mich at 92 n 14. Even if this Court were to consider the affidavits, defendants have failed to establish an error requiring reversal. Defendants did not demonstrate that the extraneous influence of juror no. 5 visiting the crime scene and conducting a test drive was "substantially related to a material aspect of the case," and that it created a real and substantial possibility that the jury's verdict was affected. *Id.* at 89. It is unclear what effect, if any, the juror's alleged visit had on the other jurors. Although Mayes's defense attorney claimed that juror no. 9 told him that if it was not for "this guy," while pointing to juror no. 5, "I would have hung the jury," this statement in and of itself does not imply that juror no. 9 was swayed by any information juror no. 5 obtained from the accident site or that juror no. 5 even shared any information from his visit. It was defense counsel who took this to mean that juror no. 5 shared

-12-

information, but there is no substantial proof of that. Given that one of the jurors stated in a voicemail left for the trial court that he had been contacted by a defense investigator, it is clear that contact was made by the defense to one of the jurors and if there was proof of misconduct, the defense should have obtained the juror's affidavit.

Further, the record shows that the jurors heard extensive testimony about the area where the accident occurred and were shown numerous photographs of the scene. Both Gilmore and Mayes testified in detail about the route that they drove from the time they left the house party to the time the accident occurred, as well as the speed Mayes was driving on the residential streets. Mayes did not contest at trial that she was intoxicated and driving at a high rate of speed down the residential streets, or that the accident occurred causing four deaths. Rather, she merely asserted that her actions were justified because she was attempting to evade Milliner out of fear he was going to crash into her car. Additionally, defendant Milliner did not contest at trial that he was intoxicated and that he was following Mayes as she took off. He seemed to suggest in closing argument that he was not driving at a high rate of speed because he was simply following her and there was no evidence of skid marks where his car came to a stop. The damage sustained to his car, however, indicates that he hit the curb at a high rate of speed. Further, Gilmore testified that defendant Milliner was traveling about one to three feet behind Mayes's car, and Gilmore was scared that Milliner was going to hit Mayes's car. Mayes also testified that she feared Milliner was going to hit her car, given how close he was following. Under these circumstances, it is unlikely that any potential extraneous information juror no. 5 obtained from visiting the accident site and conducting a test drive had any effect on the jury's verdict.

In Docket No. 325108, we affirm defendant Milliner's convictions. In Docket No. 325454, we affirm defendant Mayes's convictions.


/s/ Jane M. Beckering
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly

-13-